IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | |
|---|---|
| **CHAD EVERET BRACKEEN, et al.,** *Plaintiffs*, v. **RYAN ZINKE, in his official capacity as Secretary of the United States Department of the Interior, et al.,** *Defendants*, **CHEROKEE NATION, et al.,** *Intervenors-Defendants*. | No. 4:17-cv-00868-O |

**BRIEF OF GILA RIVER INDIAN COMMUNITY AS *AMICUS CURIAE*
IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS AND
IN OPPOSITION TO PLAINTIFFS' MOTIONS FOR SUMMARY JUDGMENT**

Jayant Kartik Tatachar
Texas Bar No. 24079438
AKIN GUMP STRAUSS HAUER
 & FELD LLP
1700 Pacific Ave, Suite 4100
Dallas, TX 72501
(214) 969-2800
jtatachar@akingump.com

Pratik A. Shah, *pro hac vice pending*
D.C. Bar No. 497108
AKIN GUMP STRAUSS HAUER
 & FELD LLP
1333 New Hampshire Ave, NW
Washington, DC 20036
(202) 887-4000
pshah@akingump.com

*Counsel for Amicus Curiae Gila River Indian Community*

**TABLE OF CONTENTS**

INTEREST OF *AMICUS CURIAE* ..................................................................................................1

ARGUMENT .....................................................................................................................................1

THE INDIAN CHILD WELFARE ACT FURTHERS, RATHER THAN HINDERS, THE
    BEST INTERESTS OF INDIAN CHILDREN ....................................................................1

    A.    *In re C.J., Jr.* Reveals No ICWA Interference With Ohio Law ................................2

    B.    Neither ICWA Nor The Community's Intervention Caused The
        "Procedural Quagmire" ..........................................................................................8

CONCLUSION ..............................................................................................................................10

# TABLE OF AUTHORITIES

**Cases:**

*A.D. by Carter v. Washburn*,
   No. CV-15-01259-PHX-NVW, 2017 WL 1019685 (D. Ariz. Mar. 16, 2017)..........................3

*Adoptive Couple v. Baby Girl*,
   133 S. Ct. 2552 (2013)................................................................................................3

*In re C.J., Jr.*,
   --- N.E.3d ----, Nos. 16AP-891, 17AP-162, 17AP-191, 2018 WL 1298798
   (Ohio Ct. App. Mar. 13, 2018)............................................................................... *passim*

*In re Cunningham*,
   391 N.E.2d 1034 (Ohio 1979)......................................................................................2

*Miss. Band of Choctaw Indians v. Holyfield*,
   490 U.S. 30 (1989).............................................................................................1, 7, 8

**Statutes & Regulations:**

25 U.S.C.
   § 1901(5)....................................................................................................................9
   § 1902........................................................................................................................3
   § 1911....................................................................................................................7, 8
   § 1915(a) ...................................................................................................................3
   § 1915(b)...................................................................................................................3

Gila River Indian Community Code
   § 7.102(B) .................................................................................................................3

Indian Child Welfare Act, Pub. L. No. 95-608, 92 Stat. 3069 (1978) (codified at
   25 U.S.C. §§ 1901-1963) .........................................................................................1

OHIO ADMIN. CODE
   5101:2-1-01(258)(iii) ................................................................................................5
   5101:2-42-05(A) .......................................................................................................4
   5101:2-42-05(E)(1) ..................................................................................................4
   5101:2-42-05(F)(1) ..................................................................................................4
   5101:2-53-03 ............................................................................................................5

OHIO REV. CODE
   § 5103.161.................................................................................................................7

**Other Authorities:**

81 Fed. Reg. 5019 (Jan. 29, 2016) .................................................................................1

*Division of Human Services Mission*, DIV. OF HUMAN SERVS., BUREAU OF INDIAN AFFAIRS, https://www.bia.gov/bia/ois/dhs (last visited May 24, 2018) .......................................5

*List of Designated Tribal Agents by Tribal Affiliation*, DIV. OF HUMAN SERVS., BUREAU OF INDIAN AFFAIRS (updated Nov. 28, 2015), https://www.indianaffairs.gov/sites/bia.gov/files/assets/bia/ois/webteam/docx/ idc1-033200.docx ......................................................................................................5

*Placement Services*, OFFICE OF FAMILIES & CHILDREN, OHIO DEP'T OF JOB & FAMILY SERVS., https://jfs.ohio.gov/ocf/placementservices.stm (last visited May 24, 2018). ......................................................................................................4, 5, 7

**INTEREST OF *AMICUS CURIAE***

The Gila River Indian Community ("Community") is a sovereign Indian nation and federally recognized Indian tribe[1] located in the State of Arizona. The Community has actively asserted its interests in state- and federal-court cases implicating the Indian Child Welfare Act ("ICWA"), Pub. L. No. 95-608, 92 Stat. 3069 (1978) (codified at 25 U.S.C. §§ 1901-1963). The Community therefore has a strong interest in the proper application of ICWA to state-court child-custody proceedings and in the continued recognition of ICWA's constitutionality.

Beyond that broad interest, the Community has a particular interest in this case in light of an argument asserted in the State of Ohio's *amicus* brief supporting plaintiffs. In that brief, Ohio portrays a recent state-court proceeding in which the Community was involved as evidence that ICWA unconstitutionally interferes with a state's ability to act in the best interests of children. As explained below, the Community submits that Ohio's example demonstrates precisely why ICWA is necessary to protect the best interests of Indian children.

**ARGUMENT**

**THE INDIAN CHILD WELFARE ACT FURTHERS, RATHER THAN HINDERS, THE BEST INTERESTS OF INDIAN CHILDREN**

Congress enacted ICWA in response to "rising concern . . . over the consequences to Indian children, Indian families, and Indian tribes of abusive child welfare practices that resulted in the separation of large numbers of Indian children from their families and tribes through adoption or foster care placement, usually in non-Indian homes." *Miss. Band of Choctaw Indians v. Holyfield*, 490 U.S. 30, 32 (1989). For the reasons set forth in the briefs of defendants, intervenors, and other *amici* supporting defendants, the Community agrees that ICWA is a valid exercise of Congress's constitutional authority.

---

[1] *See* 81 Fed. Reg. 5019, 5021 (Jan. 29, 2016).

The Community writes separately to counter plaintiffs' and other *amici*'s suggestion that ICWA "impede[s] States from acting in the best interests of children." *E.g.*, State of Ohio *Amicus Curiae* Br. 11 (ECF No. 70-1). In particular, the Community disagrees with the State of Ohio's assertion that "[a] recent Ohio case [involving the Community] shows exactly how the law causes substantial interference with state power over domestic relations." *Id.* (citing *In re C.J., Jr.*, --- N.E.3d ----, Nos. 16AP-891, 17AP-162, 17AP-191, 2018 WL 1298798 (Ohio Ct. App. Mar. 13, 2018)).

*In re C.J., Jr.* concerned a child whose birth father is an enrolled member of the Community. Once apprised (more than a year after the fact) of C.J., Jr.'s separation from his birth parents and placement into foster care with non-familial strangers, the Community intervened to seek a transfer of jurisdiction to tribal court. Although the Community believes that the Ohio court of appeals' decision reversing the transfer is wrong in several respects (and the Community has until June 18, 2018, to seek further review in the Ohio Supreme Court), its purpose is not to re-litigate that decision in this Court. The Community's point instead is that adherence to ICWA would have furthered the best interests of C.J., Jr.—*in the very manner that Ohio law independently required*. As such, Ohio's handpicked example cannot support the sweeping claims of ICWA interference advanced in its *amicus* brief here.

### A.   *In re C.J., Jr.* Reveals No ICWA Interference With Ohio Law

**1.** Ohio's principal contention is that application of ICWA and the Community's involvement in the case "divert[ed] attention from the child's best interests." Br. 12. Ohio law looks to the "best interests" of a child in considering questions of possession or custody. *Id.* at 11 (citing *In re Cunningham*, 391 N.E.2d 1034, 1038 (Ohio 1979)). But ICWA does not work at

2

cross-purposes with that "best interests" standard; rather, it was enacted specifically to "protect the best interests of Indian children," 25 U.S.C. § 1902, and does so consonant with Ohio law.[2]

ICWA's provisions codify the "gold standard" in child welfare practice for *all* children. *See, e.g.*, Brief of Casey Family Programs et al. as *Amici Curiae* in Support of Respondent Birth Father at 2, *Adoptive Couple v. Baby Girl*, 133 S. Ct. 2552 (2013) (No. 12-399), 2013 WL 1279468, at *1 ("*Amici* are united in their view that, in the Indian Child Welfare Act, Congress adopted the gold standard for child welfare policies and practices that should be afforded to all children[.]"). Among the best practices that Congress codified in ICWA—and that leading national child welfare organizations universally commend—is the placement of a child with extended family as a first option when the separation of a child from her parents is unavoidable. *See* 25 U.S.C. § 1915(a)-(b) (providing that primary preference for adoptive placement or foster care/preadoptive placement shall be with "a member of the Indian's child's extended family"); Brief of Casey Family Programs et al. as *Amici Curiae* in Support of Motions to Dismiss Amended Complaint at 8-13, *A.D. by Carter v. Washburn*, No. CV-15-01259-PHX-NVW, 2017 WL 1019685 (D. Ariz. Mar. 16, 2017) (collecting sources of child-welfare best practices).

Ohio deems the same familial placement preference to be in the "best interests" of a child. As its Office of Families and Children within the Department of Job and Family Services explains at length:

> When a child is not able to live with his or her parents, Ohio values keeping that child with family and those with whom he or she has a connection. . . . Ohio's

---

[2] The Community's laws likewise require application of the "best interests" standard:
> In any action taken pursuant to the provisions of this title [*i.e.*, the Children's Code], whether administrative or judicial in nature, the *best interest of a child* shall be given greater weight than any other interest present in a child in need of care matter and in no instance shall a family be kept unified to the detriment of a child's interest in being free from maltreatment.

Gila River Indian Community Code § 7.102(B) (2016) (emphasis added).

3

> public children services agencies strive to work with relatives who are willing and able to assume custody of a child and any siblings to explore this option first in order to prevent a child from coming into an agency's care. Ohio agencies must work with the family to explore relative options and conduct the assessments to determine their willingness and ability to care for the child.
>
> Consideration of relative resources begins with the agency's first involvement with the family to facilitate the family working together to support one another and assure the safety of the child. If a child is not able to remain with his or her parents, agencies are required to conduct a diligent search for identified relatives and notify them within thirty days of the child's removal so that they have the ability to be considered as a placement resource. The preference is for the child to have stability through a permanent arrangement such as a relative assuming legal custody.
>
> . . .
>
> Some youth have experienced multiple placements with non-relatives and have lost contact with their extended family members. Connection to family is a basic element to life, simply put children need their families and families need their children. Family provides children with their cultural, social and emotional security. In a family there is a sense of identity and belonging. Family engagement is a progressive concept moving in the child welfare system from child focused to a more family focused involvement. It is a process of locating, engaging, connecting and supporting family resources for youth.

*Placement Services*, OFFICE OF FAMILIES & CHILDREN, OHIO DEP'T OF JOB & FAMILY SERVS., https://jfs.ohio.gov/ocf/placementservices.stm (last visited May 24, 2018).

To that end, the Ohio Administrative Code instructs that "[w]hen a child cannot remain in his or her own home, the public children services agency (PCSA) or private child placing agency (PCPA) shall explore both maternal and paternal relatives regarding their willingness and ability to assume temporary custody or guardianship of the child." OHIO ADMIN. CODE 5101:2-42-05(A). And in cases where the agency has temporary custody over a child, the Code ultimately requires selection of a placement that is the "least restrictive, most family-like setting available to meet the child's emotional and physical needs," with "[t]he home of a suitable relative" being the least restrictive possible environment. *Id.* 5101:2-42-05(E)(1), (F)(1).

4

**2.** Against the foregoing legal framework, *In re C.J., Jr.* cannot be understood to illustrate ICWA's interference in state proceedings because ICWA did not stymie Ohio's ability to act (through its local agency) in C.J., Jr.'s "best interests." To be sure, "Ohio Adm. Code 5101:2-53-03 require[d] the public children services agency to inquire whether a child or a family member of the child is a member or eligible for membership in an Indian tribe." *In re C.J., Jr.*, 2018 WL 1298798, at *1. But that directive facilitates, rather than hinders, Ohio's "best interests" policy of ensuring (if at all possible) that a child be placed with willing and able relatives—in C.J., Jr.'s case, with his paternal great aunt and uncle. *See id.* at *4; *see also* OHIO ADMIN. CODE 5101:2-1-01(258)(iii) (defining "[r]elative" to include "[a]unts, uncles, nephews, and nieces, including such relative with the prefix 'great,' 'great-great,' or 'great-grand'"). Identifying a child as a member of or eligible for membership in an Indian tribe is a critical part of the "process of locating, engaging, connecting and supporting family resources for youth" through "a diligent search." *Placement Services*, *supra*.

Notably, Ohio's effort to locate potential familial placements for C.J., Jr. was less than fulsome. The contractor that Ohio used to research the birth father's "Pima Native American heritage" was "unable to locate a Pima tribe," *In re C.J., Jr.*, 2018 WL 1298798, at *1, despite the fact that the Bureau of Indian Affairs (BIA) maintains an index of "Designated Tribal Agents for Service Notice" specifically for ICWA purposes, *Division of Human Services Mission*, DIV. OF HUMAN SERVS., BUREAU OF INDIAN AFFAIRS, https://www.bia.gov/bia/ois/dhs (last visited May 24, 2018). That index links "Pima" to only the Community and one other (Arizona) tribe, neither of which was contacted. *See List of Designated Tribal Agents by Tribal Affiliation* at 26, 45, DIV. OF HUMAN SERVS., BUREAU OF INDIAN AFFAIRS (updated Nov. 28, 2015), https://www.indianaffairs.gov/sites/bia.gov/files/assets/bia/ois/webteam/docx/idc1-033200.docx.

5

Instead, Ohio sent notices erroneously listing C.J., Jr.'s birth *mother* as having (unknown) tribal affiliation to the BIA office in Minnesota and to the Department of the Interior. *See In re C.J., Jr.*, 2018 WL 1298798, at *1. And when the Department of the Interior (unsurprisingly) "responded . . . that the notice of proceedings was insufficient and requested further information," the contractor "took no further action" and Ohio did not pursue the matter further. *Id.* In moving forward with a non-familial foster placement with whom C.J., Jr. had no prior connection, Ohio fell short of effectuating its own family-first policy.

If anything, *In re C.J., Jr.* is thus a revealing example of why ICWA is necessary. Ohio took C.J., Jr. into custody in January 2015. *Id.* Although Ohio was aware from its "initial contact" with C.J., Jr.'s birth father that he may have or be eligible for tribal membership, the Community did not receive any notification until July 2016—a year-and-a-half later. *See id.* at *1-3. Had Ohio made any real effort to comply with ICWA, it would have learned through the Community's assistance that C.J., Jr. has numerous relatives in the Community—including close relatives willing and well able to care for C.J., Jr. Ohio therefore could have avoided a non-familial foster placement that was not in the "best interests" of then two-year-old C.J., Jr.—by the standards of both ICWA and Ohio law.

Ignoring its own missteps, Ohio paints *In re C.J., Jr.* (Br. 11-12) as demonstrating how a tribe can intervene in a case and use ICWA as a means to override the application of the "best interests" test for a determination of permanent custody. But the facts and the law refute Ohio's characterization at every turn. The Community's intervention was precipitated by the birth mother's decision to contact the Community, not by Ohio's filing a motion for permanent custody two months earlier. *See In re C.J., Jr.*, 2018 WL 1298798, at *2-3. Moreover, in intervening, the Community sought a transfer of jurisdiction to the Community's tribal court

under 25 U.S.C. § 1911, not a determination in Ohio courts of whether permanent custody should be granted. *See In re C.J., Jr.*, 2018 WL 1298798, at *3. Indeed, that latter question was never decided because "the magistrate judge dismissed the motion for [permanent custody] *at the request of the movant, [the Ohio agency]*" and thereafter granted the transfer. *Id.* (emphasis added). The Ohio court of appeals made clear (albeit in erroneously reversing the transfer) that it did not "decide where and with whom C.J., Jr. should live. However, [it had] been asked to decide the legal question of who should make that determination concerning this child." *Id.* at *17; *see also Miss. Band*, 490 U.S. at 53 (concluding interpretation of 25 U.S.C. § 1911 with disclaimer that "[w]e have been asked to decide the legal question of *who* should make the custody determination concerning these children—not what the outcome of that determination should be"). Accordingly, *In re C.J., Jr.* is not instructive as to ICWA's impact on the "best interests" of a child.

Nor is it preordained (as Ohio apparently assumes) that it would be in C.J., Jr.'s "best interests" to award permanent custody to his non-relative foster parents simply because C.J., Jr. has been living with them. Consistent with ICWA and the "Ohio values" set forth above, *Placement Services*, *supra*, Ohio law provides that "[i]f the agency is given permanent custody of the child and the foster caregiver . . . has informed the agency of the foster caregiver's . . . desire to adopt the child," then "*the agency shall consider giving preference to an adult relative over a nonrelative caregiver when determining an adoptive placement for the child*, provided the adult relative satisfies all relevant child protection standards and the agency determines that the placement is in the child's best interest." OHIO REV. CODE § 5103.161 (emphasis added). That consideration has special force with respect to C.J., Jr., given that his initial foster placement flouted the best practice—reflected in both ICWA's and Ohio's "best interests" standard—of

7

placing him with willing and able family members.  *See* pp. 2-4, *supra*.  As the U.S. Supreme Court has made clear in the ICWA context, "the law cannot be applied so as automatically to 'reward those who obtain custody, whether lawfully or otherwise, and maintain it during any ensuing (and protracted) litigation.'"  *Miss. Band*, 490 U.S. at 53-54A (citation omitted).

As to the Community's transfer motion itself, *In re C.J., Jr.* does not demonstrate how, "[b]ecause of the ICWA, . . . [a] child's best interests were disregarded in the juvenile court."  Ohio *Amicus Curiae* Br. 11.  The Ohio court of appeals stated that the "[g]ood cause" exception to transfer in 25 U.S.C. § 1911 "includes consideration of the child's best interests."  *In re C.J., Jr.*, 2018 WL 1298798, at *13.  Thus, the court of appeals' decision—taken at face value for present purposes (as Ohio must)—indicates that the "best interests" of a child *will* be considered under ICWA, not "disregarded" as Ohio insists.  That is the opposite of "a case show[ing] exactly how [ICWA] causes substantial interference with state power over domestic relations."  Ohio *Amicus Curiae* Br. 11.

      **B.**     **Neither ICWA Nor The Community's Intervention Caused The "Procedural Quagmire"**

Beyond attacking ICWA's substantive provisions, Ohio holds up *In re C.J., Jr.* as an example where "ICWA had the added effect of turning an ordinary custody proceeding into a procedural quagmire."  Br. 12.  But Ohio wrongly attributes any procedural complications to ICWA and the Community's intervention.  The "two separate Ohio juvenile court cases" and the "multiple parallel Ohio appeals" over a "single child," *id.*, were the product of the guardian ad litem's decision to file a new complaint after learning that Ohio's original complaint might be dismissed for failure to provide notice to the Community.  *See In re C.J., Jr.*, 2018 WL 1298798, at *5.  ICWA did not force the guardian ad litem to take that procedurally anomalous path.  Nor

8

did ICWA cause the birth mother to file an untimely notice of appeal, which the court dismissed as a matter of state law. *See id.* at *11-12.

To the extent Ohio is suggesting more broadly that custody proceedings would be more straightforward if ICWA and Indian tribes were not involved, because then the state court's attention would not be "diverted" from a child's "best interests," Br. 12, that is precisely the mindset that ICWA guards against. *See* 25 U.S.C. § 1901(5) (finding "that the States, exercising their recognized jurisdiction over Indian child custody proceedings through administrative and judicial bodies, have often failed to recognize the essential tribal relations of Indian people and the cultural and social standards prevailing in Indian communities and families"). The involvement of Indian tribes in custody proceedings concerning Indian children is not an intrusion. Even the Ohio court of appeals noted that "[n]o one has appealed or disputed that [the Community] should be allowed to intervene" and remained "cognizant that [the Community] has a protectable interest in its Indian children." *In re C.J., Jr.*, 2018 WL 1298798, at *5. Ohio's preference for how *In re C.J., Jr.* should have unfolded thus proves Congress's point in enacting ICWA.

9

## CONCLUSION

The Court should grant defendants' motion to dismiss and deny plaintiffs' motions for summary judgment.

Respectfully submitted,

*/s/ Jayant Kartik Tatachar*

| | |
|---|---|
| Jayant Kartik Tatachar | Pratik A. Shah, *pro hac vice pending* |
| Texas Bar No. 24079438 | D.C. Bar No. 497108 |
| AKIN GUMP STRAUSS HAUER | AKIN GUMP STRAUSS HAUER |
| & FELD LLP | & FELD LLP |
| 1700 Pacific Ave, Suite 4100 | 1333 New Hampshire Ave, NW |
| Dallas, TX 72501 | Washington, DC 20036 |
| (214) 969-2800 | (202) 887-4000 |
| jtatachar@akingump.com | pshah@akingump.com |

*Counsel for Amicus Curiae Gila River Indian Community*

May 25, 2018

## CERTIFICATE OF SERVICE

I certify that on May 25, 2018, the foregoing *amicus curiae* brief was electronically submitted to the Clerk of Court for the U.S. District Court for the Northern District of Texas using the Court's electronic case filing system.  Accordingly, notice of this filing will be sent to all counsel of record.


*/s/Jayant Kartik Tatachar*
