**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION**

CHAD EVERET BRACKEEN, et al.,

    and

STATE OF TEXAS,
STATE OF LOUISIANA, and
STATE OF INDIANA,

        Plaintiffs,

     v.

RYAN ZINKE, in his official capacity as
Secretary of the United States Depart-
ment of the Interior, et al.,

        Defendants,

CHEROKEE NATION, et al.,

        Intervenor-Defendants.

Case No. 4:17-cv-00868-O

**PLAINTIFFS' RESPONSE IN OPPOSITION TO
INTERVENOR-DEFENDANTS' MOTION TO STAY PENDING APPEAL**

# TABLE OF CONTENTS

INTRODUCTION ................................................................................................ 1

ARGUMENT ..................................................................................................... 2

I.     The Tribes Are Unlikely to Succeed on Appeal. .................................... 3

       A.     Equal Protection .......................................................................... 4

       B.     Non-Delegation ............................................................................ 5

       C.     Anti-Commandeering ................................................................... 6

       D.     The Final Rule ............................................................................. 7

II.    The Tribes Cannot Demonstrate Irreparable Injury. ........................... 9

III.   A Stay Threatens Irreparably Injury to the Plaintiffs. ...................... 11

IV.    The Public Interest Does Not Favor a Stay. ....................................... 14

V.     The Tribes' Motion Fails Under Their Alternative Standard. .......... 14

CONCLUSION ............................................................................................... 17

# TABLE OF AUTHORITIES

**Cases**                                                                                                      **Page(s)**

*Awad v. Ziriax,*
   670 F.3d 1111 (10th Cir. 2012) ................................................................................ 14

*Barber v. Bryant,*
   833 F.3d 510 (5th Cir. 2016) .................................................................................. 15

*Baskin v. Bogan,*
   766 F.3d 648 (7th Cir. 2014) .................................................................................. 16

*Bostic v. Schaefer,*
   760 F.3d 352 (4th Cir. 2014) .................................................................................. 16

*Campaign for S. Equality v. Bryant,*
   773 F.3d 55 (5th Cir. 2014) .............................................................................. 15, 16

*Chamber of Commerce v. U.S. Dep't of Labor,*
   885 F.3d 360 (5th Cir. 2018) .................................................................................... 7

*Consumer Prod. Safety Comm'n v. GTE Sylvania, Inc.,*
   447 U.S. 102 (1980) ................................................................................................. 8

*DeBoer v. Snyder,*
   772 F.3d 388 (6th Cir. 2014) .................................................................................. 16

*In re Deepwater Horizon,*
   732 F.3d 326 (5th Cir. 2013) .................................................................................. 16

*Elrod v. Burns,*
   427 U.S. 347 (1976) .......................................................................................... 11, 13

*Exxon Mobil Corp. v. Allapattah Servs., Inc.,*
   545 U.S. 546 (2005) ................................................................................................. 8

*Franciscan All., Inc. v. Burwell,*
   227 F. Supp. 3d 660 (N.D. Tex. 2016) ................................................................... 12

*G & V Lounge, Inc. v. Mich. Liquor Control Comm'n,*
   23 F.3d 1071 (6th Cir. 1994) .................................................................................. 14

*Grogan v. Garner,*
   498 U.S. 279 (1991) ................................................................................................. 9

*Gundy v. United States*,
   138 S. Ct. 1260 (2018) ............................................................ 6

*Hobby Lobby Stores, Inc. v. Sebelius*,
   723 F.3d 1114 (10th Cir. 2013), *aff'd sub nom. Burwell v. Hobby Lobby*
   *Stores, Inc.*, 134 S. Ct. 2751 (2014) ...................................... 14

*Kitchen v. Herbert*,
   755 F.3d 1193 (10th Cir. 2014) ............................................ 16

*Latta v. Otter*,
   771 F.3d 456 (9th Cir. 2014) ............................................... 16

*Morton v. Mancari*,
   417 U.S. 535 (1974) ........................................................... 5

*Murphy v. NCAA*,
   138 S. Ct. 1461 (2018) ........................................................ 7

*New York v. United States*,
   505 U.S. 144 (1992). Order 36 ............................................ 7

*Nken v. Holder*,
   556 U.S. 418 (2009) ....................................................*passim*

*Opulent Life Church v. City of Holly Springs, Miss.*,
   697 F.3d 279 (5th Cir. 2012) .............................................. 12

*Printz v. United States*,
   521 U.S. 989 (1997) ........................................................... 7

*Rice v. Cayetano*,
   528 U.S. 495 (2000) ....................................................... 4, 5

*Ruiz v. Estelle*,
   650 F.2d 555 (5th Cir. 1981) .............................................. 15

*Sosna v. Iowa*,
   419 U.S. 393 (1975) .......................................................... 16

*Testa v. Katt*,
   330 U.S. 386 (1947) ........................................................... 6

*Texas v. United States*,
   300 F. Supp. 3d 810 (N.D. Tex. 2018) ................................. 6

*Texas v. United States*,
     787 F.3d 733 (5th Cir. 2015) ..........................................................*passim*

*Time Warner Cable, Inc. v. Hudson*,
     667 F.3d 630 (5th Cir. 2012) ................................................. 12

*United States v. Heri Garcia*,
     202 F. Supp. 3d 1109 (N.D. Cal. 2016) ................................. 11

*United States v. Mazurie*,
     419 U.S. 544 (1975) ................................................................ 6

*Winter v. Nat. Res. Def. Council, Inc.*,
     555 U.S. 7 (2008) .................................................................... 3

**Constitutional Provisions**

La. Const. art. 1, § 3 ........................................................... 14

**Statutes**

5 U.S.C. § 706........................................................................ 12

25 U.S.C. § 1913.................................................................... 11

25 U.S.C. § 1914.................................................................... 11

25 U.S.C. § 1915...................................................................... 5

25 U.S.C. § 1952...................................................................... 8

Tex. Fam. Code §§ 162.015, 264.1085 ....................................... 14

**Other Authorities**

44 Fed. Reg. 67,584 (Nov. 26, 1979) ................................... 7, 8, 9

81 Fed. Reg. 38,778 (June 14, 2016) ........................................ 8

H.R. Rep. No. 95–1386 (1978) ............................................... 10

S. Rep. No. 95–597 (1977)...................................................... 10

Texas Dep't of Family & Protective Servs., Texas Adoption Resource
     Exchange, View Waiting Children, Search Results for "Ages 13 to 17
     years old," https://www.dfps.state.tx.us/Application/TARE/Search.aspx/
     Children (last visited Oct. 15, 2018) ....................................... 5

# INTRODUCTION

The motion for a stay pending appeal of Intervenor-Defendants ("Tribes") is not remotely the ordinary motion for a stay pending appeal that seeks to preserve the status quo while appeals are adjudicated. That is because the state child welfare and custody proceedings that ICWA and the Final Rule used to govern cannot be paused for months or years while the Tribes appeal this Court's judgment. The vulnerable children involved in state child welfare and custody proceedings cannot wait in legal limbo until those appeals conclude. They must be placed in loving, forever homes.

Thus, in seeking a stay pending appeal, what the Tribes really request is that the Court use its equitable powers to order that ICWA and the Final Rule continue to apply and govern state child custody proceedings involving those children defined by ICWA as "Indian children," notwithstanding the fact that to do so would violate multiple provisions of the United States Constitution. It is worthwhile to pause to consider how extraordinary that request is: The Tribes are asking this Court to order that dozens, if not hundreds, of "Indian children" now involved in child welfare and custody proceedings in Texas, Louisiana, and Indiana, continue to have their placements determined according to a regime that this Court has adjudicated to be unconstitutional. And the Tribes are asking this Court to order that the Final Rule, including its scale-elbowing clear-and-convincing standard of proof, continue to apply to hundreds, if not thousands, of Indian children now involved in child welfare and custody proceedings elsewhere in the United States, notwithstanding this Court's conclusion that those regulations must be set aside because they are contrary to the Constitution and even ICWA itself. To put a fine point on it: Baby O. and Child P. each will be the subject of adoption proceedings taking place in December. If the Court grants the Tribes motion for a stay, the Final Rule presumably will apply to those proceedings, denying to the Librettis and Cliffords the most important relief they sought in this action. And for the Brackeens, a stay pending appeal may deny them

any effective relief on their claim that Section 1913(d)'s collateral attack period discriminates on the basis of race.

The Court should deny the Tribes' extraordinary request because it fails to satisfy the controlling four-factor test for granting a stay pending appeal. The Court's summary judgment order gave due consideration to controlling precedent and found ICWA and the Final Rule to be unconstitutional not just in one respect, but in several. It is unlikely the Fifth Circuit or Supreme Court will overturn this decision on appeal. The Tribes also fail to articulate *any* irreparable injury that *they* will suffer absent a stay. By contrast, a stay will irreparably harm Plaintiffs. For the Individual Plaintiffs, a stay will deny them much of the effective relief they won in the judgment. And State Plaintiffs' courts and agencies will continue to be commandeered by the federal government and forced to abide by the tribes' placement preferences. Finally, the public interest always favors judicial decrees requiring the government to abide by the Constitution. For these reasons, the Court should deny the Tribes' motion for a stay pending appeal.

## ARGUMENT

"A stay is not a matter of right, even if irreparable injury might otherwise result to the appellant." *Texas v. United States*, 787 F.3d 733, 747 (5th Cir. 2015) (citation and internal quotation marks omitted). This is because a "stay is an intrusion into the ordinary processes of administration and judicial review." *Nken v. Holder*, 556 U.S. 418, 427 (2009). Thus, when deciding whether to issue a stay pending appeal, courts must assess four factors: "(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies." *Id.* at 434.

The first two factors—likelihood of success and irreparable injury—"are the most critical." *Id.* "It is not enough that the chance of success on the merits be better than negligible." *Id.* (citation and internal quotation marks omitted). Instead, the applicant for a stay must make a "strong showing" that it will prevail on appeal. Likewise, "simply showing some possibility of irreparable injury fails to satisfy the second factor." *Id.* at 434–35; *accord Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008) (rejecting the notion that the "possibility" of irreparable harm satisfies that factor in the similar injunctive relief analysis). If an applicant satisfies the first two factors for issuance of a stay, then the court may assess the harm to the opposing party and the public interest. *Nken*, 556 U.S. at 435; *see Texas*, 787 F.3d at 747 (analyzing first whether the federal government had made a "strong showing" that it was "likely to succeed on the merits"). Here, all four factors point toward denial of the Tribes' motion.

## I. The Tribes Are Unlikely to Succeed on Appeal.

The Tribes fail to make any showing—much less the necessary "strong showing"—that they are likely to succeed on appeal. *Nken*, 556 U.S. at 434. The Court already determined after full briefing and a four-hour hearing that the Tribes' (and Federal Defendants') arguments in defense of ICWA and the Final Rule are unpersuasive. The Court is not required to backtrack from those conclusions and re-presume the constitutionality of the federal statute for purposes of analyzing a request for a stay pending appeal. In fact, the Tribes fail to cite any Fifth Circuit case that has applied the "presumption of constitutionality" in the context of a stay motion, and counsel for Plaintiffs have found none. Indeed, the notion that the Court could grant a stay, as the Tribes suggest, even when it is "difficult for the Court to conclude that defendants are likely to succeed on appeal," Tribes' Br. 3, ECF No. 169, is flatly contrary to *Nken*, which requires a "strong showing" of likelihood of success on the merits, *Nken*, 556 U.S. at 434. In any event, the Court's opinion reflects that Plaintiffs

overcame any presumption of constitutionality as to equal protection, non-delegation, anti-commandeering and the APA, and the Tribes' stay motion does nothing to call into doubt the Court's analysis and conclusions.

### A.     Equal Protection

The Tribes say the Court misapplied *Rice v. Cayetano*, 528 U.S. 495 (2000). According to the Tribes, in *Rice*, the Supreme Court found ancestry to be a proxy for race because the law there "did not require any political relationship with a separate sovereign." Tribes' Br. 5. But *Rice* assumed *arguendo* that the class of Native Hawaiians were on the same footing as an Indian tribe, but nevertheless concluded "Congress may not authorize a State to create a voting scheme of this sort." 528 U.S. at 519. The Court held that such a putatively political classification was a proxy for race because it involved a critical state affair rather than an issue pertaining to self-governance of a separate sovereign. *Id.* at 522. Here, ICWA's classification is even more obviously a proxy for race than the classification in *Rice* because it applies not only to children who are members of a Tribe but also those merely eligible to be a member. The Tribes concede as much: the "child must either be a member of a tribe or be eligible for membership and a biological child of a member." Tribes' Br. 5. Membership and eligibility for membership are based on biology—a person's ancestry—which is a proxy for race. *See Rice*, 528 U.S. at 514 ("Ancestry can be a proxy for race. It is that proxy here."). ICWA's classification system is a proxy for race, and because the system involves the critical state affair of state child welfare and custody proceedings, it is one that equal protection forbids.

The Tribes argue that ICWA's application to children who are merely eligible for membership in a tribe creates only a legitimate political classification because parents of a newborn need time to complete the paperwork necessary to obtain tribal membership for the child. Tribes' Br. 5. Of course, this overlooks the fact that many child custody proceedings involve older children, such as Child P., or children whose

biological parents do not wish to enroll their child in a tribe, such as A.L.M.[1] But the Tribes also miss a more fundamental point: in *Rice*, the Supreme Court recognized that *Morton v. Mancari*, 417 U.S. 535 (1974) established a "limited exception" to the general rule against racial classifications. *Rice*, 528 U.S. at 520. A classification that includes children who are merely eligible for membership in a tribe goes beyond the "limited exception" that *Mancari* approved. Indeed, a classification that includes persons who are not members in a tribe (but are merely eligible to become members) cannot plausibly be defended as "political" at all. As the Tribes elsewhere explain in touting ICWA's inapplicability to persons who are racially Native American but not members of federally-recognized tribes, Tribes' Mot. for Summ. J. Br. 18, ECF No. 145, it is this *limitation* of the classification to members of a federally-recognized tribe that allows the Tribes to characterize it as political. If the classification depends not just on tribal membership (which undisputedly has a blood quantum requirement) but alternatively on "records documenting lineage," Tribes' Br. 5, the classification must be regarded as one based on blood quantum and ancestry, not political status. The Tribes are not likely to prevail on the equal protection claim on appeal.

## B.   Non-Delegation

The Tribes also contend that an appellate court will reverse the Court's non-delegation holding, claiming that there is no delegation of legislative power because "Congress determined the relevant placement preferences." Tribes Br. 6. But the Tribes admit that "Congress . . . allowed tribes, through formal decision, to '*establish a different order of preference*.'" *Id.* (quoting 25 U.S.C. § 1915(c)) (emphasis added). As the Court recognized, the "power to change specifically enacted Congressional

---

[1]   Currently, the Texas Department of Family and Protective Services lists 524 children between the ages of 13 to 17 years old awaiting adoption out of a total of 839 children of all ages. *See* Texas Dep't of Family & Protective Servs., Texas Adoption Resource Exchange, View Waiting Children, Search Results for "Ages 13 to 17 years old," https://www.dfps.state.tx.us/Application/TARE/Search.aspx/Children (last visited Oct. 15, 2018).

priorities and impose them on third parties can only be described as legislative." Order 31, ECF No. 166. Indeed, reordering the placement preferences can dramatically alter the outcome for a child, effectively deciding whether the child will be placed with his extended family, other members of his tribe, or members of any of more than 500 other tribes. The Constitution prohibits Congress from delegating such sweeping legislative power.

The Tribes also argue that any delegation of legislative authority to Indian tribes is permissible under *United States v. Mazurie*, 419 U.S. 544 (1975). Not so. In *Mazurie*, the Court explained that the limits on Congress's authority to delegate its legislative power are "less stringent in cases where the entity exercising the delegated authority itself possesses *independent authority* over the subject matter," such as the authority that tribes possesses "over both their members and their territory" and "their internal and social relations." *Id.* at 557. But ICWA delegates to the tribes authority to establish placement preferences applicable to *non-members* in *state courts*. The Tribes do cite any precedent supporting a delegation of legislative power to control non-Indians with no connection to Indian territory. This bolsters the Court's conclusion that ICWA is unconstitutional under the non-delegation doctrine.[2] The Tribes are unlikely to prevail on Plaintiffs' non-delegation claim on appeal.

## C.    Anti-Commandeering

In support of their argument that the Court erred on the anti-commandeering claim, the Tribes wrongly contend that the Court "overlooked" the principle that state courts must enforce federal prescriptions. Tribes' Br. 7. In actuality, the Court carefully analyzed *Testa v. Katt*, 330 U.S. 386 (1947), and concluded that the principle

---

[2]    The Tribes also warn that reversal is likely because the Supreme Court has not invalidated a law on non-delegation grounds since 1935. But the Supreme Court currently has a non-delegation case before it this term. *Gundy v. United States*, 138 S. Ct. 1260 (2018). And this Court struck down a federal regulation earlier this year on non-delegation grounds. *See Texas v. United States*, 300 F. Supp. 3d 810, 848 (N.D. Tex. 2018) (invalidating HHS Certification Rule for the Health Insurance Providers Fee on non-delegation grounds).

set forth in that case could not save ICWA because the statute does not provide a federal cause of action that state courts must adjudicate, but rather commands state courts to apply federal rules of decision in state law causes of action. Order 34–35. Moreover, the Tribes ignore the Court's separate finding that ICWA commandeers state child welfare agencies to carry out a federal program, in violation of *Murphy v. NCAA*, 138 S. Ct. 1461 (2018), *Printz v. United States*, 521 U.S. 989 (1997), and *New York v. United States*, 505 U.S. 144 (1992). Order 36; *see also* State Pls.' Br. 42–45, ECF No. 74. The Tribes' failure even to address ICWA's and the Final Rule's commandeering of state agencies demonstrates that they are unlikely to prevail on this claim on appeal.

### D.    The Final Rule

The Tribes assert that the Court erred in setting aside the Final Rule because federal agencies may decide whether regulations are "necessary," and because the Department of Interior's conclusion that rules were needed justified its decision to abandon its interpretation of the statute after 40 years. Tribes' Br. 8–9. This is wrong for several reasons.

First, in *Chamber of Commerce v. U.S. Department of Labor*, the Fifth Circuit held that an agency's sudden discovery of ruling-making power after forty years highlighted the rule's unreasonableness. 885 F.3d 360, 380 (5th Cir. 2018). From the time of ICWA's enactment to the promulgation of the Final Rule, Interior had acknowledged that Congress did not intend it "to exercise supervisory control over state or tribal courts or to legislate for them with respect to Indian child custody matters." 44 Fed. Reg. 67,584, 67,584 (Nov. 26, 1979). Interior even expressly stated that it "has an obligation not to assert authority that it concludes it does not have." *Id*. Because the agency failed to offer any reason for abandoning that decades-long interpretation of the statute, the Court correctly applied *Chamber of Commerce* and held the new interpretation unlawful. The Tribes' failure to cite or grapple with the

Fifth Circuit's controlling decision in *Chamber of Commerce* suggests strongly that they will not prevail on appeal on Plaintiffs' APA challenge.

Second, the Tribes claim the Solicitor of the Interior's memorandum on the Final Rule provides sufficient justification for the rule-making about-face. The Solicitor, however, relies not on case law or even ICWA itself, but on portions of ICWA's legislative history, citing unadopted versions of the ICWA bills that would have required detailed rulemaking by Interior. "As [the Supreme Court has] repeatedly held, [however,] the authoritative statement is the statutory text, not the legislative history or any other extrinsic material. Extrinsic materials have a role in statutory interpretation only to the extent they shed a reliable light on the enacting Legislature's understanding of otherwise ambiguous terms." *Exxon Mobil Corp. v. Allapattah Servs., Inc.*, 545 U.S. 546, 568 (2005).  Legislative intent should generally be gleaned from the statute itself, *Consumer Prod. Safety Comm'n v. GTE Sylvania, Inc.*, 447 U.S. 102, 108 (1980), and a plain reading of ICWA indicates that Congress gave Interior 180 days from the date of enactment—November 8, 1978—to promulgate rules. 25 U.S.C. § 1952. Instead, Interior waited 40 years to issue the Final Rule. ICWA provides no support for such a rulemaking.

Third, Interior has flip-flopped on the legislative history and meaning of critical ICWA standards. For example, Interior originally stated, based on examination of the legislative history, that the "good cause" standard gave state courts flexibility to decide child custody proceedings involving Indian children. 44 Fed. Reg. at 67,590. But in 2016, Interior's Final Rule declared that the "good cause" standard was narrow and limited in scope, constraining state courts, 81 Fed. Reg. 38,778, 38,782 & 38,839 (June 14, 2016), even though ICWA itself is silent on the matter. The Tribes contend that Interior legitimately clarified the "good cause" standard in 2016 because state courts were applying it inconsistently. Tribes' Br. 9. But inconsistency is just a pejorative for state-court flexibility, which Interior claimed

was the original purpose of the standard. 44 Fed. Reg. at 67,590. And flexibility is key in child custody proceedings where state courts must balance parental rights against the best interest of children. As this Court recognized, ICWA's "silence" on the good cause standard "is inconsistent with the view that Congress intended to require a special, heightened standard of proof." *Grogan v. Garner*, 498 U.S. 279, 286 (1991). The Tribes' motion does not cite or otherwise address *Grogan*. Thus, even if Interior had the statutory authority to issue the Final Rule—and it does not—it will not prevail on the legality of the "good cause" regulation because Congress never intended it to be a heightened standard for ICWA proceedings. Thus, the Tribes are unlikely to prevail on the APA claim on appeal.

## II.   The Tribes Cannot Demonstrate Irreparable Injury.

The Tribes have "not demonstrated that [they] will be irreparably injured absent a stay." *Texas*, 787 F.3d at 767. The irreparable injury analysis focuses on the alleged injury that a *party* to the litigation may suffer, but nowhere do the Tribes point to a specific irreparable injury *they* will suffer without a stay. Instead, the Tribes rely on generalizations about what Indian children and families *may*, or *may not*, experience now that state courts and agencies are freed from ICWA and the Final Rule.

For example, the Tribes argue that they "*may* lose their statutory rights in state-court proceedings," Tribes' Br. 9 (emphasis added), including 52 cases in Texas, *id*. at 10. This argument fails to establish irreparable harm for three independent reasons. First, the mere "possibility of irreparable injury" is insufficient to warrant a stay, *Nken*, 556 U.S. at 434 (citation and internal quotation marks omitted), and the Tribes here cannot and do not show that they actually will be denied the right to participate in any pending or future cases. Even if the Tribes lose the right to mandatory intervention that ICWA grants to them, they may seek to permissively intervene in cases that implicate their interests. Second, the Tribes cannot claim

harm from the loss of "statutory rights" that themselves have been adjudicated to violate the Constitution. And, here, the Court has concluded that the "statutory rights" ICWA grants direct the operation of state agencies and courts in a manner that violates multiple constitutional provisions. Third, the Tribes nowhere explain how loss of ICWA's statutory rights will harm the Tribes as political bodies. This is fatal to their stay request because *Nken* requires the movant to show how it will be irreparably harmed in the absence of a stay.

The Tribes seek to substitute claims of harm to "Indian children," Tribes' Br. 10, in place of a showing of harm to themselves, but this argument also fails, even on its own terms. Needless to say, Individual Plaintiffs strongly disagree that this Court's ruling will bring harm to A.L.M, Baby O., or Child P. Moreover, the alleged harm to Indian children turns on the outrageous and completely unsubstantiated suggestion that "Texas, Louisiana, and Indiana [may] return to the unconscionable practices that Congress found objectionable when it enacted ICWA 40 years ago." Tribes' Br. 10. At the threshold, Congress did not cite Texas, Louisiana, or Indiana when discussing the problems that led to ICWA's enactment. *See* S. Rep. No. 95–597, at 46–50 (1977); H.R. Rep. No. 95–1386, at 9 (1978). But more to the point, the Tribes offer no reason to believe that State Plaintiffs' child welfare agencies and state courts will take action to harm Indian children. Indeed, state law commands them to safeguard the best interests of those children. It is ICWA that subordinates the child's best interests to other concerns. The fact that decades after ICWA's enactment, "Indian children" are more likely to be placed in foster care than children of other races hardly demonstrates ICWA's necessity, or that "these statistics . . . would only become worse" in the absence of a stay. Tribes' Br. 11. It demonstrates instead that ICWA is a failed federal policy.

The Tribes also claim injury from the fact that that without a stay "it is possible that termination and adoption decisions in [Texas, Louisiana, and Indiana] that are

inconsistent with ICWA could not be reversed should the Tribes prevail on appeal." Tribes' Br. 11. The Tribes invocation of what is "possible" certainly fails the *Nken* standard. *See* 556 U.S. at 434 ("possibility of irreparable injury" is insufficient to warrant a stay). Moreover, the Tribes fail to show how they will suffer any harm from a hypothetical termination or adoption decision that follows state law but otherwise is "inconsistent with ICWA." In any event, if a higher court reverses the Court's ruling, ICWA provides an action "to invalidate" decisions contrary to ICWA. *See* 25 U.S.C. § 1914. Thus, the Tribes have not demonstrated an irreparable injury warranting a stay.

## III.   A Stay Threatens Irreparably Injury to the Plaintiffs.

The Tribes breezily assert that "[t]here is no risk that a stay will injure the Plaintiffs in this litigation." Tribes' Br. 11. The Court, however, determined that ICWA unconstitutionally discriminates against Indian children and non-Indian parents on the basis of race, unconstitutionally delegates Congressional power to a third party, and unconstitutionally commandeers state courts and agencies. The violation of constitutional rights constitutes irreparable harm as a matter of law. *Elrod v. Burns*, 427 U.S. 347, 373–74 (1976). But beyond that, Plaintiffs will suffer multiple harms if the Court stays its final judgment.

For the Individual Plaintiffs, the harm of a stay is clear. The Brackeens will continue to face the threat of a collateral attack under 25 U.S.C. § 1913(d) on their adoption of A.L.M.—an adoption that a Texas state court originally disallowed under ICWA. Indeed, because that collateral attack period expires in just 14 months, a stay of the final judgment "until all appeals are final," Tribes' Prop. Order, ECF No. 168-1, may effectively deny the Brackeens any relief on their challenge to section 1913(d). This alone is a sufficient reason to deny a stay. *See, e.g., United States v. Heri Garcia*, 202 F. Supp. 3d 1109, 1117 n.4 (N.D. Cal. 2016) (denying stay when "a delay might moot any relief that might be due). The Tribes claim this collateral attack harm is

speculative, but the placement of the Brackeens' family in a legally disadvantaged category is itself an injury, *see Time Warner Cable, Inc. v. Hudson*, 667 F.3d 630, 636 (5th Cir. 2012), and one that the Fifth Circuit recognizes as irreparable, *see, e.g.*, *Opulent Life Church v. City of Holly Springs, Miss.*, 697 F.3d 279, 295 (5th Cir. 2012). Moreover, reinstatement of ICWA in Texas may delay or frustrate the Brackeens' effort to adopt A.L.M.'s sister. *See* Mem. in Supp. of Individual Pls.' Opposed Mot. for Leave to Suppl. Record ¶ 2, ECF No. 171.

The other individual plaintiffs will also suffer injury if the Court issues a stay. The Tribes claim that "the [Court's] ruling . . . has no effect on the Libretti's ability to adopt Baby O," Tribes' Br. 13, but the Court's summary judgment order set aside the Final Rule, and that rule, if reinstated, presumably would apply to the Libretti's petition to adopt Baby O., which is set for a hearing in December. App.004 (Decl. of Mark Fiddler ¶ 2, Oct. 15, 2018). The harm a stay would impose on the Cliffords is even more stark: In December, the Cliffords will participate in contested adoption proceedings concerning Child P. *Id.* (Fiddler Decl. ¶ 3). If this Court grants the Tribes' motion, the Final Rule and its enhanced clear-and-convincing burden to show good cause with limited categories of evidence presumably would continue to apply in those proceedings as well. *Id.* The fact that Nevada and Minnesota are not parties to this litigation does not diminish the effectiveness of the Court's vacatur of the Final Rule, which necessarily is effective nationwide. *See* 5 U.S.C. § 706(2) ("the reviewing court shall . . . hold unlawful and set aside agency action . . . found to be . . . not in accordance with law [or] contrary to constitutional right"); *Franciscan All., Inc. v. Burwell*, 227 F. Supp. 3d 660, 695 (N.D. Tex. 2016) (holding federal regulation invalid and confirming that the effect of the ruling was nationwide).

The Tribes also misapprehend the injury to State Plaintiffs if a stay issues. They claim that other States, as *amici*, conveyed their desire to comply with ICWA and that Louisiana recently passed a law requiring the same. Tribes' Br. 12. This,

they say, shows State Plaintiffs will suffer no injury under a stay. But the fact that other States want to voluntarily comply with ICWA shows federalism at work. Now that the Court has declared ICWA unconstitutional, State Plaintiffs are free to make that choice for themselves, subject, of course, to other requirements of federal law such as the Equal Protection Clause of the Fourteenth Amendment. If the Court issues a stay, however, State Plaintiffs will once again suffer the constitutional injury of having their agencies, courts, personnel, and resources commandeered. This violation of their constitutional rights itself is an irreparable injury. *Elrod*, 427 U.S. at 373–74.

Finally, the Tribes' suggest they are entitled to a stay because Plaintiffs did not seek a preliminary injunction or litigate the case with "dispatch." Tribes' Br. 12. This claim is wrong legally and utterly disingenuous factually. It is wrong legally because the pace of litigation before the district court has no bearing whatsoever as to whether the final judgment resulting from litigation should be stayed pending appeal. Nor is there any presumption in the law that a stay pending appeal should issue if a plaintiff does not seek preliminary relief.[3] It is disingenuous factually because it was the Defendants who repeatedly tried to delay the briefing and adjudication of Plaintiffs' motions for summary judgment. First, they sought to stay briefing of summary judgment pending disposition of their motion to dismiss on jurisdictional grounds. *See* ECF No. 68. There, too, they argued that Plaintiffs "will not be prejudiced" by a stay, *id*. at 1, but this Court rejected Defendants' requests for a stay of proceedings. But that was not the end of Defendants' delay tactics. It took

---

[3]     For the avoidance of doubt, Plaintiffs chose to seek early summary judgment rather than a motion for a preliminary injunction not to delay but instead because: (1) the absence of material disputed facts made the case ripe for immediate judgment as a matter of law; (2) a motion for preliminary relief would have raised the question whether the preliminary relief effectively would grant to Individual Plaintiffs all the relief they sought in the final judgment; and (3) to focus appellate proceedings on the disputed questions of constitutional and administrative law rather than the standard of appellate review.

until August 16—some 10 months after Plaintiffs first brought their APA challenge—for the federal government finally to file the administrative record. ECF No. 159. The Tribes' claim that Plaintiffs have not litigated the case with "dispatch" is baseless.

## IV.   The Public Interest Does Not Favor a Stay.

The Court's final judgment protects the public from an unconstitutional act of Congress and an unlawful agency rule. The public interest factor weighs heavily against the issuance of a stay, because the public always favors the protection of constitutional rights. *See Hobby Lobby Stores, Inc. v. Sebelius*, 723 F.3d 1114, 1145 (10th Cir. 2013) ("[I]t is always in the public interest to prevent the violation of a party's constitutional rights." (quoting *Awad v. Ziriax*, 670 F.3d 1111, 1131–32 (10th Cir. 2012))), *aff'd sub nom. Burwell v. Hobby Lobby Stores, Inc.*, 134 S. Ct. 2751 (2014); *G & V Lounge, Inc. v. Mich. Liquor Control Comm'n*, 23 F.3d 1071, 1079 (6th Cir. 1994) (stating the same). It is also in the public interest to maintain separation of powers, *Texas*, 787 F.3d at 768, and the Court's summary judgment order reestablished the appropriate allocation of power between the federal and state governments in child custody proceedings. A stay would again upset that balance, disserving the public.

In a similar way, the public interest favors protecting individuals from a racially discriminatory child custody law. In fact, it is the public policy of State Plaintiffs to prohibit racial discrimination in child custody proceedings. *See* Tex. Fam. Code §§ 162.015, 264.1085; La. Const. art. 1, § 3. That children previously subject to ICWA are now free from the statute's racially discriminatory preferences—thus allowing state courts to assess their individual needs rather than the racial preferences of the United States or Tribes—weighs decisively against a stay.

## V.   The Tribes' Motion Fails Under Their Alternative Standard.

The Tribes contend that if they present a "substantial case on the merits" on "a serious legal question," and the equities "weigh heavily" in favor of a stay, then the Court may issue a stay without satisfying the four factors outlined in *Nken*. Tribes'

Br. 2–3 (citing *Campaign for S. Equality v. Bryant*, 773 F.3d 55, 57 (5th Cir. 2014), and *Ruiz v. Estelle*, 650 F.2d 555, 565 (5th Cir. 1981)). But this alternative standard is either wrong as a matter of law under *Nken*, or reserved for an extraordinary case not present here.

Nken held that a stay applicant must satisfy the first two factors—strong showing of likelihood of success and irreparable injury—before the court may proceed to the second two. *See Nken*, 556 U.S. at 435 ("Once an applicant satisfies the first two factors, the traditional stay inquiry calls for assessing the harm to the opposing party and weighing the public interest."). That is because the first two factors are the "most critical." *Id*. at 434. Thus, *Ruiz*'s holding—that a greater showing of harm to the opposing party and public interest, coupled with a clear indication of irreparable injury to the applicant, means a court may issue a stay on a lesser showing of likelihood of success—has been abrogated by *Nken. Ruiz*, 650 F.2d at 565–66.[4]

More recently, the Fifth Circuit has analyzed all the *Nken* factors, and has not invoked the Tribes' proposed standard. For example, when the Fifth Circuit reviewed a preliminary injunction against the Deferred Action for Parents of Americans program, it did not cite *Bryant* or *Ruiz* or even mention their alternative standard for a stay. Instead, it applied the straightforward four-factor test in *Nken*, and declined to issue a stay. *See Texas*, 787 F.3d at 746–47; *see also Barber v. Bryant*, 833 F.3d 510, 511–12 (5th Cir. 2016) (applying *Nken* only and declining to issue a stay pending appeal).

To the extent the alternative standard persists among some panels of the Fifth Circuit, it seems to be reserved for extraordinary circumstances not present here. *Bryant* involved a challenge to Mississippi's laws prohibiting same-sex marriage, and

---

[4]     *Bryant*'s "substantial case" standard possibly could be reconciled with *Nken* if it were viewed as a reformulation of *Nken*'s "strong showing" standard. *Bryant*, of course, could not have applied a standard lesser than that dictated by *Nken*, which is what the Tribes urge here.

arose during the apex of a national debate over the legality of such marriages, and after a circuit split on the issue had erupted. *See Bryant*, 773 F.3d at 57–58 (citing *Latta v. Otter*, 771 F.3d 456, 467 (9th Cir. 2014); *Baskin v. Bogan*, 766 F.3d 648, 672 (7th Cir. 2014); *Bostic v. Schaefer*, 760 F.3d 352, 384 (4th Cir. 2014); *Kitchen v. Herbert*, 755 F.3d 1193, 1229–30 (10th Cir. 2014); *DeBoer v. Snyder*, 772 F.3d 388, 420–21 (6th Cir. 2014)). Thus, in that instance, it was clear that the "serious legal question" raised by the case soon would be resolved by the Supreme Court (which it was, inside of seven months). *See also In re Deepwater Horizon*, 732 F.3d 326, 345 (5th Cir. 2013) (invoking the relaxed standard because the "case is one of the largest and most novel class actions in American history"). The same is not true here. Thus, when considering the Tribes' motion for a stay pending appeal in this case, the court should apply the Supreme Court's test in *Nken*, not those in *Bryant* or *Ruiz*.

Even so, as shown above, the Tribes have shown no substantial case on the merits here. To be sure, many of the legal issues raised here are of first impression, but the answers are clear and discerned easily from the controlling precedents of *Rice*, *Murphy*, and *Chamber of Commerce*.

Nor have the Tribes shown that the balance of equities "weighs heavily" in favor of a stay. *Bryant*, 773 F.3d at 57. The Tribes note that, unless the Court stays its decision, there will be disuniformity in the law with different standards governing child welfare and custody proceedings in different states. First, as noted above, that is not true with respect to the Final Rule; this Court's judgment set aside the Final Rule, which means it cannot have force of law anywhere. Second, the absence of uniformity among the States in matters of child custody is not extraordinary, or even particularly unusual, because child welfare and custody matters is classically a domain of state law. *See Sosna v. Iowa*, 419 U.S. 393, 404 (1975). To be sure, ICWA intended to require States to administer uniform federal standards, but that is not an equity weighing in favor of a stay; it just restates one of ICWA's constitutional

flaws. The uncertainty with respect to ICWA's continued viability calls for prompt appellate review, but it does not justify a stay pending that appeal.

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court deny the Tribes' motion to stay the final judgment.

Respectfully submitted this 15th day of October, 2018.

JEFF LANDRY
Attorney General of Louisiana

CURTIS HILL
Attorney General of Indiana

KEN PAXTON
Attorney General of Texas

JEFFREY C. MATEER
First Assistant Attorney General

BRANTLEY D. STARR
Deputy First Assistant Attorney General

JAMES E. DAVIS
Deputy Attorney General for Civil Litigation

*/s/ David J. Hacker*
DAVID J. HACKER
Special Counsel for Civil Litigation
Texas Bar No. 24103323
david.hacker@oag.texas.gov

OFFICE OF THE ATTORNEY GENERAL
P.O. Box 12548, Mail Code 009
Austin, Texas 78711-2548
(512) 936-1414

*Attorneys for State Plaintiffs*

*/s/ Matthew D. McGill*
Matthew D. McGill (*pro hac vice*)
Lochlan F. Shelfer (*pro hac vice*)
GIBSON, DUNN & CRUTCHER LLP
1050 Connecticut Avenue, N.W.
Washington, D.C. 20036
(202) 887-3680
mmcgill@gibsondunn.com
lshelfer@gibsondunn.com

Scott K. Hvidt
Texas Bar No. 24097864
GIBSON, DUNN & CRUTCHER LLP
2100 McKinney Ave., Suite 1100
Dallas, TX 75201
Telephone: (214) 698-3100
Facsimile: (214) 571-2976
shvidt@gibsondunn.com

*Attorneys for Individual Plaintiffs*

Mark Fiddler
FIDDLER LAW OFFICE, P.A.
6800 France Ave. So., Suite 190
Minneapolis, MN 55435
mark@fiddler-law.com
Telephone: (612) 822-4095
Facsimile: (612) 822-4096

*Attorney for Frank and Heather Libretti, and Jason and Danielle Clifford*

## CERTIFICATE OF SERVICE

I hereby certify that on October 15, 2018, I electronically filed the foregoing document through the Court's ECF system, which automatically serves notification of the filing on counsel for all parties.

*/s/ David J. Hacker*
DAVID J. HACKER